## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | |
|---|---|
| **KEISHA PINKSTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.:** |
| v. ) | |
| ) | **REQUEST FOR JURY TRIAL** |
| **CREEKSTONE FARMS PREMIUM** ) | |
| **BEEF, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| Serve Registered Agent: ) | |

S. Douglas Mackay
604 Goff Industrial Park Rd
Arkansas City, Kansas 67005

## COMPLAINT

Plaintiff Keisha Pinkston, by and through undersigned counsel, and for her claims against the above-named Defendant, hereby states and alleges as follows:

1. At all times relevant, Plaintiff was and is a Kansas citizen.

2. Defendant Creekstone Farms Premium Beef, LLC is a limited liability company organized under the laws of Delaware, which does business in Kansas and is in good standing to do so.

3. Plaintiff brings the following claims against Defendant: disability discrimination, failure to accommodate, and retaliation, in violation of the Americans with Disabilities Act as Amended, 42 U.S.C. § 12101 *et seq*., and wrongful discharge in violation of public policy, specifically the Kansas Workers' Compensation Act, arising under Kansas common law.

4. Defendant operates a processing facility in Arkansas City, Cowley County,

1

Kansas.

5. Plaintiff worked for Defendant at its facility in Arkansas City, Cowley County, Kansas.

6. Defendant took adverse employment actions against Plaintiff in Arkansas City, Cowley County, Kansas.

7. Defendant is a covered "employer" under the Kansas Workers' Compensation Act.

8. At all relevant times, Defendant employed more than fifteen people and was engaged in an industry affecting interstate commerce, making it an "employer" within the meaning of the Americans with Disabilities Act as Amended ("ADAAA"), 42 U.S.C. § 12111(5).

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Counts I-III of Plaintiff's Complaint arise under the laws of the United States, specifically the ADAAA, 42 U.S.C. § 12101 *et seq*.

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count IV of Plaintiff's Complaint, as that count is so related to the claims encompassed within Counts I-III as to form one case or controversy.

11. These facts make jurisdiction and venue proper in this Court.

**FACTS COMMON TO ALL COUNTS**

12. Pursuant to Defendant's conditional offer of employment, Defendant required that Plaintiff complete a Pre-Employment Medical History Questionnaire on site in Defendant's Medical Department on June 18, 2024.

13. The text at the top of Plaintiff's Pre-Employment Medical History Questionnaire stated:

> The information contained in this questionnaire will be maintained in a confidential manner. It will be used by the company to assist in proper job placement. False or omitted information may prevent employment or result in termination of employment for intentional falsification. This document will be reviewed, in detail with the post-offer applicant and medical staff member.

14. The Pre-Employment Medical History Questionnaire contained fifty different health conditions, and the instructions stated: "Please mark 'yes' or 'no' if you have ever experienced any of the below items or conditions." Plaintiff mistakenly thought the Questionnaire asked whether she was currently experiencing any of the fifty health conditions, and checked the "no" box for each, then signed and dated the Questionnaire.

15. Plaintiff was then hired and began working for Defendant in the Production Department on June 19, 2024.

16. Plaintiff initially worked on the brisket trimming line and was subsequently transferred to the tenderloin trimming line in July of 2024.

17. As a Production Department employee, Plaintiff assisted with cutting, trimming and packaging meat.

18. Plaintiff was trained by Lloyd l/n/u, and her direct supervisor was Pedro Velasquez.

19. At the end of June of 2024 and beginning of July of 2023, Plaintiff began experiencing pain in her hands and arms.

20. Plaintiff reported these symptoms to Pedro and Lloyd, who told Plaintiff that it comes with the job and everyone experienced similar symptoms.

21. On July 1, 2024, Plaintiff was experiencing muscle spasms in her arms and

upper back.

22. Plaintiff reported these symptoms to Lloyd and obtained permission to leave work to seek medical treatment at the emergency room.

23. Plaintiff clocked out and sought treatment at the William Newton Community Hospital Emergency Room, reporting pain in her left hand and back. The provider prescribed muscle relaxer medication and gave Plaintiff a note excusing her from work the rest of the day.

24. Thereafter, Plaintiff continued experiencing pain in her arms that radiated to her upper back.

25. On or about July 24, 2024, Lloyd asked Plaintiff if she would want to move to the tenderloin cutting line on the premise that it would alleviate her symptoms and improve her production speed as it was less weight than the brisket cutting line.

26. Plaintiff agreed to Lloyd's proposed position change, and she worked on the tenderloin cutting line until the end of her employment.

27. On August 12, 2024, Plaintiff was scraping and cleaning off the grease that had become frozen to the trim table, as she walked to the other side of the table, she slipped on a piece of meat trim that was left on the platform in front the table, and fell landing on her tailbone and striking her right arm on the platform.

28. Two of Plaintiff's coworkers witnessed her fall — the employee closest to Plaintiff attempted to catch her as she fell, then helped her stand back up.

29. Immediately following the injury, Plaintiff informed Pedro how it occurred and Pedro instructed her to go to Defendant's on-site medical clinic to complete an incident report.

30. Plaintiff completed an incident report, and Defendant's medical clinic personnel took photos of the bruise on her arm, then placed her on a ten day 'protocol' — which

4

meant Plaintiff went to the clinic twice a day to receive ice and heating pads for her back.

31. On August 15, 2024, Lloyd made note on his Trainer Notes and Comments log that Plaintiff "made mention of her back 'being on fire'. She is insistent on continuing to work and hesitant on going to health service due to negative reactions from supervisor and health service personnel." The next day, Lloyd made note on the same log that "Keisha is getting ice/heat twice a day for her back."

32. On August 29, 2024, Plaintiff reported to Defendant's medical clinic personnel that she was still in pain due to her injury the previous week, and in response, Plaintiff's protocol period was extended and she was asked to complete an injury report.

33. Defendant did not offer to send Plaintiff to an outside medical treatment provider, so Plaintiff attempted to visit an urgent care clinic outside of work and was informed that the urgent care clinic could not provide treatment without authorization from Defendant's workers' compensation insurer due to Plaintiff's injury being work related.

34. On September 4, 2024, Plaintiff reported to Defendant's medical clinic personnel that she wanted to see a doctor for her back injury, explaining how she attempted to visit an urgent care for her back injury and was turned away due to it being work related.

35. Defendant's medical clinic personnel explained that they would "look into" work comp and have her fill out additional paperwork.

36. Defendant's medical clinic personnel then asked Plaintiff if she had any prior injuries or medical treatment for her back before she began working for Defendant. Plaintiff said no and explained the only medical treatment she had for her back was epidurals during the delivery of her two children. One of Defendant's medical clinic personnel left the clinic while Plaintiff waited.

37. The medical clinic employee then returned with Raquel Sexton—a human resources representative for Defendant—who met with Plaintiff in the clinic. Ms. Sexton asked Plaintiff why she did not disclose her two pregnancies on her Pre-Employment Medical Questionnaire. Plaintiff explained that she thought the Questionnaire was asking about current conditions.

38. Amanda Bolling—Defendant's Workers Compensation Analyst—then instructed Plaintiff to write a statement about all prior medical treatment she received for her back, including two doctor's notes in Plaintiff's personnel file from June 26, 2024 (primary care physician visit for migraines) and the July 1, 2024 emergency room visit when Plaintiff obtained permission from Lloyd to seek medical treatment—both doctor's notes were submitted by Plaintiff for the purpose of excusing her absence from work. Ms. Sexton then informed Plaintiff she would be placed on suspension pending further investigation and escorted her out of the facility.

39. Despite the June 26, 2024 and July 1, 2024 doctor's visits occurring after Plaintiff began working for Defendant, they were used as support to pretextually suspend and terminate Plaintiff's employment for alleged falsification of her Pre-Employment Medical Questionnaire.

40. On September 6, 2024, Ms. Sexton called Plaintiff and told her that she was being terminated for falsifying her Pre-Employment Medical Questionnaire.

41. Plaintiff's had her child enrolled in Defendant's on-site daycare program for five months prior to applying and being hired to work for Defendant.

42. When deposed in Plaintiff's underlying workers compensation claim, Sexton testified that the extent of her investigation during Plaintiff's suspension was comparing her

6

written statement from the meeting on September 4, 2024 to her Medical Questionnaire. Sexton also testified that she did not know whether Plaintiff intentionally falsified her Medical Questionnaire.

43. When deposed in Plaintiff's underlying workers compensation claim, Ms. Bolling testified that every time an employee alleges a work-related injury at Defendant's facility, the employee's Pre-Employment Medical Questionnaire is reviewed for inconsistencies.

44. In a Preliminary Order pursuant to Plaintiff's underlying workers' compensation claim, the Administrative Law Judge noted:

> "The Court further notes that Respondent's routine practice, upon learning an employee is alleging a work-related injury, of trying to find inconsistencies on the employee's pre-employment medical history form as a basis for terminating the employee is not indicative of a good faith effort to maintain the employment. This is especially the case when the inconsistencies on the medical history form are unrelated to the alleged work-related injury."

45. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

46. On June 23, 2025, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant engaged in discriminatory actions that are being raised in this lawsuit, or alternatively, all conduct alleged herein would have arisen from the investigation of such Charge of Discrimination.

47. A Notice of Right-to-Sue letter dated December 5, 2025, has been issued and this action is being brought within ninety (90) days of the issuance of such Right-to-Sue letter from EEOC.

48. Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT AS AMENDED
## (DISPARATE TREATMENT)

49. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of her Complaint, as though fully stated herein.

50. Plaintiff suffered from physical impairments, including impairments resulting from the injuries sustained as described above.

51. Plaintiff's physical impairments limited Plaintiff from major life activities, including the ability to lift, grasp, sleep, perform manual tasks, and maintain employment.

52. Defendant believed that these physical impairments limited Plaintiff from additional major activities and would do so for much longer than they actually did.

53. In reality, Plaintiff could at all times perform the essential job functions of her position with reasonable accommodations, including slightly modified duty, job protected leave, and/or position reassignment.

54. Plaintiff was qualified for her former position.

55. Defendant took adverse employment actions against Plaintiff, including but not limited to refusing to accommodate Plaintiff and discharging her from employment.

56. These adverse employment actions were taken because of Plaintiff's disability—whether actual or perceived.

57. Defendant has displayed a pattern and practice of discriminating against employees who have disabilities.

58. Defendant's conduct was willful and wanton and demonstrates malice.

59. Thus, an award of punitive and exemplary damages is appropriate.

60. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

61. Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant, after jury trial, for her actual and compensatory damages in an amount exceeding $75,000.00; for punitive damages in an amount deemed fair and reasonable by the jury; for pre- and post-judgment interest; reasonable attorneys' fees and costs; and for all other relief deemed just and proper by this Court.

## COUNT II
### DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED
**(FAILURE TO ACCOMMODATE)**

62. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of her Complaint as though fully stated herein.

63. Plaintiff suffered physical impairments, including impairments resulting from the injuries sustained as described above.

64. Plaintiff's physical impairments limited Plaintiff from major life activities, including the ability to lift, grasp, sleep, perform manual tasks, and maintain employment.

65. Plaintiff suffered from a "disability" as defined by 42 U.S.C. § 12102(1).

66. Defendant had an affirmative obligation to engage in the interactive

accommodation process with Plaintiff after becoming aware of her medical condition and need for accommodations.

67. Defendant failed to take reasonable steps to determine if Plaintiff could be accommodated.

68. Defendant failed to accommodate Plaintiff through slightly modified duty, position reassignment, and/or a reasonable period of leave.

69. The failure to engage in the interactive process and failure to reasonably accommodate Plaintiff constitute violations of the ADAAA.

70. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

71. The conduct of Defendant, as set forth above, was intentionally harmful to the Plaintiff and done without just cause.

72. Additionally, the conduct of Defendant, as set forth above, was done with evil motive.

73. Thus, an award of punitive damages is appropriate.

74. Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages; for Plaintiff's costs and expenses incurred herein; for her attorneys' fees; for the

equitable relief of front pay; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT III
### RETALIATION IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT AS AMENDED

75. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of her Complaint as though fully stated herein.

76. Plaintiff suffered physical impairments, including impairments resulting from the injuries sustained as described above.

77. Plaintiff's physical impairments limited Plaintiff from major life activities, including the ability to lift, grasp, sleep, perform manual tasks, and maintain employment.

78. Plaintiff engaged in activity protected by the ADAAA, including but not limited to requesting reasonable accommodations for her disabilities.

79. Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment.

80. Defendant's adverse actions taken against Plaintiff were each based upon, and directly related to, Plaintiff's protected activities under the ADAAA.

81. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

82. Plaintiff is also entitled to recover all of her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant for equitable relief in the form of reinstatement to her former position or a substantially similar position with Defendant; back pay and front pay, if reinstatement is not possible; Plaintiff's costs, expenses, and attorneys' fees incurred herein; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT IV
### WRONGFUL DISCHARGE
### IN VIOLATION OF PUBLIC POLICY
### (KANSAS WORKERS COMPENSATION ACT)

83. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of her Complaint, as though fully stated herein.

84. Plaintiff exercised rights granted by the Kansas Worker's Compensation Act.

85. These rights included, but are not limited to, reporting a work-related injury, requesting medical treatment for a work-related injury, and reasonable time off for convalescence.

86. Defendant's adverse actions taken against Plaintiff were each based upon, and directly related to, Plaintiff exercising her rights granted by the Kansas Worker's Compensation Act.

87. Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment.

88. Defendant's adverse employment actions taken against Plaintiff were based upon, and directly related to, Plaintiff exercising rights granted by the Kansas Workers Compensation Act.

89. Defendant's adverse actions against Plaintiff violate public policy clearly declared by the Courts and the Kansas legislature.

90. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

91. Defendant acted toward Plaintiff with willful conduct, wanton conduct, and/or malice.

92. Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant, after jury trial, for her actual and compensatory damages in an amount exceeding $75,000; for punitive damages; for pre- and post-judgment interest; and for all other relief deemed just and proper by this Court.

## **DEMAND FOR JURY TRIAL AND DESIGNATION OF TRIAL**

Plaintiff requests a trial by jury in the United States District Court for the District of Kansas and designates trial to be held at the Robert J. Dole Federal Courthouse in Kansas City, KS on all accounts and allegations of wrongful conduct alleged in this Complaint.

Dated: February 2, 2026                           Respectfully submitted,


                                                  */s/ Brittany K. Ussery*
                                                  Daniel L. Doyle, KS Bar No. 11260
                                                  John F. Doyle, KS Bar No. 26550
                                                  Brittany K. Ussery, KS Bar No. 30022
                                                  DOYLE & BRUCE LLC
                                                  748 Ann Avenue
                                                  Kansas City, Kansas 66101
                                                  (913) 543-8558
                                                  (913) 543-3888 Facsimile
                                                  Dan@KCLaw.com
                                                  John@KCLaw.com
                                                  Brittany@KCLaw.com

                                                  ***Counsel for Plaintiff***